BENJAMIN R. LINGLE *et al.*, Respondents, *v.* THE NATIONAL INSURANCE COMPANY, JOHN HOGAN, STOCKHOLDER, Appellant.

45 109
118 264

1. *Insurance companies — Motion for judgment against stockholders — President, purchase of judgments by.*—In case of motion against the president of an insolvent insurance company, as stockholder therein, for the amount of an unsatisfied judgment against the company, he will not be allowed to offset the face of a judgment against the company, purchased by him while president, on speculation, but only the sum actually paid by him for the same. In such case the company's interests and his were identical. Public policy and morality alike forbid the chief managing officer of a company in such a manner to speculate for his private gain.

### *Appeal from St. Louis Circuit Court.*

*Terry & Terry*, and *S. Reber*, for appellant, cited City and County of St. Louis v. Alexander, 23 Mo. 528 ; R. M. Carlton, 260, 265.

*Hudgens & Son*, for respondents, cited Gen. Stat. 1865, p. 329, § 19 ; 36 Mo. 523 ; 28 Mo. 106 ; 3 Hill, 190 ; 8 Bos. 396 ; 33 Mo. 377 ; Barb. on Parties, 361–2 ; 7 Paige, 18 ; 8 Paige, 33 ; 1 Chit. Pl. 40 *et seq.;* Pearson v. Nesbitt, 1 Dev. 315.

WAGNER, Judge, delivered the opinion of the court.

This was a proceeding to recover of John Hogan, a stockholder in the National Insurance Company, the amount of a judgment obtained and held by the respondents against said company. It seems that Hogan was president of the company, and owned stock to the amount of three thousand dollars, which he paid by his services as such officer. Whilst so acting as president, the company became insolvent, and Nixon & Co. brought suit against it for $4,500, the amount of a policy they held against it. During the pendency of the suit, Hogan negotiated for the claim, and procured an assignment of it to him for the sum of $675, and then let judgment go against the company for the full amount.

Execution on respondents' judgment against the company was duly returned, no property found, and a motion was then made, according to the provisions of the statute, for judgment against

Hogan as a stockholder. This motion he resisted, on the ground that he had paid all that he was liable for, and claimed the $4,500, the whole amount of the Nixon judgment, as among the credits to which he was entitled. The Circuit Court allowed him a credit for $675, the amount he actually paid, but refused to allow him $4,500, the face of the Nixon judgment, and then found against him for the amount of the respondents' debt. From that decision he appealed. It seems to me that the judgment of the court below was clearly right. At the time Hogan purchased the judgment he was president of the company, and acting for the company. The company's interests and his, in the transaction, were identical, and could not be separated. Whatever advantage he gained inured to its benefit. To permit the chief managing officer of a company in such a manner to speculate for his private gain, would be detrimental to the company and the other stockholders, and would lead to fraud, injustice, and wrong. Public policy and morality alike forbid that such a proceeding should be sanctioned. It is true that, in ordinary cases, no person would have a right to complain of the transaction but the company who suffered by the acts of its officer. But, in a case like this, the creditors whose rights are impaired should be permitted to make the objection. The true meaning and intent of the law was that the shareholders should be responsible, in a certain amount, to those who had trusted the company ; and if such transactions as the record here discloses were permitted, the object and reason of the law would be evaded or totally defeated, and the stockholders would escape the measure of their liability. The court below allowed Hogan $675, the amount he actually paid out, and that was all he was entitled to ; the balance belonged to the company, and formed a part of its assets.

With the concurrence of the other judges, the judgment will be affirmed.